## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
)
CAUSE OF ACTION INSTITUTE            )
1875 Eye Street, N.W., Suite 800      )
Washington, D.C. 20006,               )
                                      )
            Plaintiff,                )
                                      )
      v.                              )      Civil Action No. 19-413
                                      )
U.S. DEPARTMENT OF VETERANS AFFAIRS   )
810 Vermont Avenue, N.W.              )
Washington, D.C. 20420,               )
                                      )
            Defendant.                )
_____)

## COMPLAINT

1.      Plaintiff Cause of Action Institute ("CoA Institute") brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking access to agency records maintained by Defendant Department of Veterans Affairs ("VA") by and through its various components, including the Veterans Health Administration and the Tomah VA Medical Center.

2.      The records at issue in this case concern pharmacy operations and service disruptions at the Tomah VA Medical Center in Tomah, Wisconsin.  Although Defendant VA issued a final determination on CoA Institute's FOIA request, the agency improperly applied FOIA exemptions, failed to conduct an adequate search, and otherwise neglected its statutory obligations. Defendant VA also failed to respond in a timely manner to CoA Institute's subsequent FOIA appeal.  Defendant VA has withheld agency records to which CoA Institute has a right and that serve the public interest in transparent and accountable government.

## JURISDICTION AND VENUE

3.      Jurisdiction is asserted pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B).

4.      Venue is proper pursuant to 28 U.S.C. § 1391(e) and 5 U.S.C. § 552(a)(4)(B).

## PARTIES

5.      Plaintiff CoA Institute is a 501(c)(3) non-profit strategic oversight group advocating for economic freedom and individual opportunity advanced by honest, accountable, and limited government.  In carrying out its mission, CoA Institute uses various investigative and legal tools to educate the public about the importance of government transparency and accountability.  CoA Institute regularly requests access under the FOIA to the public records of federal agencies, entities, and offices—including the VA—and disseminates its findings, analysis, and commentary to the public.

6.      Defendant VA is an agency within the meaning of 5 U.S.C. § 552(f)(1).  The VA, by and through its various components, has possession, custody, and/or control of records to which CoA Institute seeks access and that are the subject of this Complaint.

## FACTS

### A.      The Tomah VA Medical Center

7.      The Tomah VA Medical Center is a veterans' healthcare facility located in Tomah, Wisconsin.  In addition to standard inpatient care, it also provides outpatient services across the western and central areas of the state.  *See About the Tomah VA Medical Center*, Dep't of Veterans Affairs, http://bit.ly/2Bq2Cka (last visited Feb. 19, 2019).  The medical center is organized within the VA as a component of the Veterans Health Administration.

8.      According to media reports, a "climate-control malfunction" occurred at the Tomah VA Medical Center's "outpatient pharmacy" on or about December 17, 2017.  *See, e.g.*, M.D. Kittle, *Bad Medicine? Tomah VA Pharmacy Hit With Temperature Surge*, MacIver Inst., Jan. 5, 2018, http://bit.ly/2TC3lpu.  This incident, which resulted in temperatures fluctuating "as high as

97 degrees for at least an hour," led to the spoilage of part of the pharmacy's stock of medicine, but VA officials nevertheless continued to distribute compromised medicine "for about four hours." *Id.* Certain narcotics, including painkillers, "were not subjected to the heat spike." *Id.*

9.     The ultimate cost of this "malfunction" incident, and the price for the "'replacement of pharmaceuticals and supplies' was estimated at $60,000." Matt Kittle, *Records Detail Hot Medicine Mess At Tomah VA*, MacIver Inst., June 6, 2018, http://bit.ly/2LVqra6. Subsequent reporting suggested that Tomah VA Medical Center officials also knowingly sought to cover-up the distribution of compromised medicines. *See* Matt Kittle, *Source: Tomah VA 'Hiding the Truth' About Overheated Medicines*, MacIver Inst., June 27, 2018, http://bit.ly/2vfX5JX.

10.     The Tomah VA Medical Center has a history of controversy. In 2016, the U.S. Senate Homeland Security and Governmental Affairs Committee released a report criticizing the VA Office of Inspector General ("OIG") for its role in withholding details about, and otherwise ignoring, substantive complaints from an employees' union and other anonymous sources regarding the deadly over-prescription of pharmaceutical drugs. *See, e.g.*, Rebecca Kheel, *Senate report: Systematic failures at VA watchdog led to veterans' deaths*, The Hill, May 31, 2016, http://bit.ly/2GtjMAJ. This widespread availability of drugs even inspired the Tomah VA Medical Center's nickname: "Candy Land." *Id.*; *see also* U.S. Sen. Comm. on Homeland Sec. & Gov't Affairs, Majority Staff Report: The Systemic Failures and Preventable Tragedies at the Tomah VA Medical Center (2016), *available at* http://bit.ly/2Bq6mlI. And the death of one former Marine resulted in the $2.3 million settlement of a wrongful death suit against the federal government. *See, e.g.*, Ed Treleven, *$2.3 million settlement reached in death of former Marine at Tomah VA*, Wisc. State Journal, Oct. 28, 2017, http://bit.ly/2MPRh1x.

11.    In another instance that resulted in an OIG investigation and class-action lawsuit filed by six veterans, a Tomah VA Medical Center dentist was found to have used unsterilized dental instruments, thus "expos[ing] hundreds of veterans to infections that included HIV and hepatitis." Ed Treleven, *Vets file class action lawsuit over use of unsterilized dental equipment at Tomah VA*, Wisc. State Journal, Nov. 1, 2017, http://bit.ly/2UKuvL2.

12.    Despite recent suggestions that the management of the Tomah VA Medical Center has improved, *see generally* Dep't of Veterans Affairs, Office of Inspector Gen., Comprehensive Healthcare Inspection Program Review of the Tomah VA Medical Center, Rep. No. 17-05400-246 (2018), *available at* http://bit.ly/2BoMU8Z, the details surrounding the December 2017 disruption in the outpatient pharmacy raise serious questions about waste, fraud, and abuse in the administration of vital veterans' healthcare services.

**B.    The February 8, 2018 FOIA Request**

13.    On February 5, 2018, CoA Institute submitted a FOIA request by electronic mail to the Tomah VA Medical Center. Ex. 1. That request sought access to two categories of records:

1.  All records, including, but not limited to email communications and maintenance, inspection, and repair reports, relating to the climate control system at the Tomah VA Medical Center. This includes, but is not limited to, any records regarding temperature fluctuations or increases at the Tomah VA Medical Center pharmacy.

2.  All records, including but not limited to email communications and maintenance, inspection, and repair reports, relating to disruptions in the dispensing of medication at the Tomah VA Medical Center pharmacy. This includes, but is not limited to, any records regarding temperature fluctuations on December 17, 2017 and any subsequent actions related to those fluctuations.

Ex. 1 at 1.

14.    CoA Institute indicated that the time period for the February 8, 2018 FOIA request was "December 15, 2017 to the present." *Id.*; *see also id.* at 1 n.2 ("[T]he term 'present' should

be construed as the date on which the agency begins its search for responsive records.  *See Pub. Citizen v. Dep't of State*, 276 F.3d 634 (D.C. Cir. 2002).").

15.     For purposes of its request, CoA Institute defined the term "record" as "the entirety of the record any portion of which contains responsive information." *Id.* at 1 n.4 (citation omitted).

16.     CoA Institute requested a public interest fee waiver and classification as a representative of the news media for fee purposes. *Id.* at 2–3.

17.     By letter, dated May 21, 2018, the VA Great Lakes Health Care System provided the VA's final response—styled as an "initial agency decision"—to CoA Institute's FOIA request, which had been assigned tracking number 18-04113-F.  Ex. 2.

18.     The VA identified thirty-seven (37) pages of records as responsive to Item One of the February 8, 2018 request, and seventeen (17) pages as responsive to Item Two.  *Id.* at 1.

19.     Various portions of the responsive records were withheld in part or in their entirety under Exemption 3, in conjunction with 38 U.S.C. § 5705; Exemption 5, in conjunction with the deliberative process privilege; and Exemption 6.  *See id.* at 1–3.

20.     In one instance, no applicable exemption was cited to withhold portions of a record. Defendant instead redacted the information as "non-responsive" because it "was comingled within responsive documents but did not pertain to [CoA Institute's] request[.]"  *Id.* at 3.

21.     Defendant failed to issue any determinations on CoA Institute's fee-related requests.

22.     By letter, dated August 6, 2018, CoA Institute timely appealed Defendant VA's adverse determination, explaining that the agency had improperly relied on Exemptions 3, 5, and 6; failed to segregate non-exempt material from responsive records; failed to meet its burden under

the FOIA's "foreseeable harm" standard; improperly redacted portions of records as "non-responsive"; and failed to conduct an adequate search for responsive records.  Ex. 3.

23.     Defendant VA acknowledged receipt of CoA Institute's administrative appeal by letter, dated August 7, 2018, and assigned the appeal tracking number 98678.  Ex. 4.

24.     To date, Defendant VA has provided only limited updates on the processing of CoA Institute's FOIA appeal.  *See* Ex. 5.  Between October 25, 2018 and January 31, 2019—a span of three months—CoA Institute's appeal remained at the same position in the VA's processing queue, even though the VA was unaffected by end-of-the-year government shutdown and presumably continued its FOIA operations.  *Id.*  Defendant VA has been unable to provide any estimate as to the estimated date of completion for the processing of the August 6, 2018 FOIA appeal.

## CLAIM ONE
## Violation of the FOIA: Failure to Comply with Statutory Requirements

25.     CoA Institute repeats and incorporates by reference all of the above paragraphs.

26.     The FOIA requires an agency to accept and process any request for access to agency records that (a) "reasonably describes such records," and (b) "is made in accordance with published rules stating the time, place, fees, . . . and procedures to be followed[.]"  5 U.S.C. § 552(a)(3)(A).

27.     An agency must respond to a valid request within twenty (20) business days or, in "unusual circumstances," within thirty (30) business days.  *Id.* § 552(a)(6)(A)(i), (a)(6)(B)(i); *see also id.* § 552(a)(6)(B)(iii) (defining "unusual circumstances").  An agency is required to "make a determination with respect to any appeal within" the same time frame.  *Id.* § 552(a)(6)(A)(ii).

28.     When an agency issues its determination on a request, it must state "such determination and the reasons therefor."  *Id.* § 552(a)(6)(A)(i)(I).  This includes a specific statement, particular to the request at issue, which "inform[s] the requester of the scope of the documents that the agency will produce, as well as the scope of the documents that the agency

plans with withhold under any FOIA exemptions." *Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 186 (D.C. Cir. 2013).

29.     The FOIA limits an agency's ability to withhold information to situations where "the agency reasonably foresees that disclosure would harm an interest protected by an exemption" or when "disclosure is prohibited by law[.]" 5 U.S.C. § 552(a)(8)(A)(i)(I)–(II).

30.     In applying the FOIA's nine statutory exemptions, *id.* § 552(b)(1)–(9), an agency must "take reasonable steps necessary to segregate and release nonexempt information[.]" *Id.* § 552(a)(8)(A)(ii)(II).

31.     CoA Institute's February 5, 2018 FOIA request seeks access to agency records maintained by Defendant, reasonably describe the records sought, and otherwise complies with the FOIA and applicable VA regulations.

32.     Defendant failed to assert any lawful basis under the FOIA for withholding agency records, or portions thereof, responsive to CoA Institute's request under any statutory exemption.

33.     Defendant furthermore (1) failed to meet its burden under the "foreseeable harm" standard, *see id.* § 552(a)(8)(A)(i)(I); (2) failed to conduct an adequate search for responsive records, *see, e.g.*, *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990); and (3) improperly withheld portions of records as "non-responsive." *See Am. Immigration Lawyers Ass'n v. Exec. Office for Immigration Rev.*, 830 F.3d 667, 670 (D.C. Cir. 2016) (There is "no statutory basis for redacting ostensibly nonresponsive information from a record deemed responsive[.]").

34.     Defendant also has failed to issue a timely determination on CoA Institute's August 6, 2018 FOIA appeal.

35.     Defendant has irreparably harmed CoA Institute by improperly withholding agency records to which CoA Institute has a right of access.  CoA Institute will continue to be irreparably harmed until the VA grants full access to all responsive records.

36.     CoA Institute has fully exhausted its administrative remedies under 5 U.S.C. § 552(a)(6)(C).

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff CoA Institute respectfully requests and prays that this Court:

a.     Enter an Order declaring that Defendant VA has improperly withheld the requested agency records or portions thereof;

b.     Order Defendant VA to conduct supplemental searches and re-process all records responsive to CoA Institute's February 5, 2018 FOIA request within twenty (20) business days from entry of the Order;

c.     Order Defendant VA to produce all non-exempt responsive records promptly upon issuing its revised final determination;

d.     Maintain jurisdiction over this case until Defendant VA complies with the Order and, if applicable, adequately justifies its treatment of all responsive records;

e.     Award CoA Institute its costs and reasonable attorney fees incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

f.     Grant such other relief as the Court may deem just and proper.

//

//

Dated: February 19, 2019

Respectfully submitted,

*/s/ Ryan P. Mulvey*
Ryan P. Mulvey
D.C. Bar No. 1024362
Lee A. Steven
D.C. Bar No. 468543

CAUSE OF ACTION INSTITUTE
1875 Eye Street, N.W., Suite 800
Washington, D.C. 20006
Telephone: (202) 499-4232
Facsimile: (202) 330-5842
ryan.mulvey@causeofaction.org
lee.steven@causeofaction.org

*Counsel for Plaintiff CoA Institute*